IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | EP-02-CR-1285 |
| | § | |
| BENITO VELEZ | § | |

## ORDER

On this day, the Court considered Defendant Benito Velez's ("Mr. Velez") "Motion for a Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)" ("Mot."), ECF No. 387. Mr. Velez has served over twenty years of a lifetime sentence for conspiracy to possess with intent to distribute marijuana and money laundering. Judgment 1—2, ECF No. 285. He now moves to the Court to grant his request for compassionate release, arguing that he is serving an "unusually long sentence," which constitutes an "extraordinary and compelling" reason for relief under 18 U.S.C. § 3582(c)(1)(A)(i). Mot. 1, ECF No. 387. The Court agrees.

## BACKGROUND

On March 12, 2003, a grand jury returned an indictment against Mr. Velez and several co-defendants. *See* Superseding Indictment, ECF No. 76. The grand jury charged Mr. Velez with (1) conspiring to possess, with the intent to distribute, in excess of 1,000 kilograms of marijuana in violation of 21 U.S.C. §§ 841, 846; (2) conspiring to possess, with the intent to distribute, in excess of 5 kilograms of cocaine in violation of 21 U.S.C. §§ 841, 846; and (3) money laundering, in violation of 18 U.S.C. § 1956. Superseding Indictment, ECF No. 76.[1] On August 14, 2003, a jury found Mr. Velez guilty of counts one and three for marijuana conspiracy and money laundering. Jury Verdict 1, 4, ECF No. 253.

On October 20, 2003, the United States Probation Office ("Probation") provided the

---

1 Count 2 was subsequently dismissed by the Court. PSR ¶ 5, ECF No. 401.

Court with its presentencing investigation report. *See Presentencing Investigation Report* ("PSR"), ECF No. 401. Therein, Probation found that the conspiracy was responsible for trafficking 58,923.45 kilograms of marijuana. *Id.* at ¶ 89. Based on this quantity, Probation set Mr. Velez's base offense level at 38. *Id.* at ¶¶ 90, 97. Because he had no scoreable prior criminal history, his criminal history score was one. *Id.* at ¶ 110. After adjusting for his role in the conspiracy and use of a minor, Probation assigned Mr. Velez a total offense level of 46. *Id.* at ¶ 104. Based on this score, Mr. Velez was subject to a mandatory life sentence. *Id.* at ¶ 135. On December 12, 2003, this Court sentenced Mr. Velez to life in prison. Amended Judgment, ECF No. 285.

On February 29, 2024, Mr. Velez filed a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Mot., ECF No. 387.

## LEGAL STANDARD

In 1984, Congress enacted the Sentencing Reform Act, which "forbade the federal courts from 'modify[ing] a term of imprisonment once it has been imposed.'" *U.S. v. Shkambi*, 993 F.3d 388, 390 (5th Cir. 2021) (quoting Pub. L. No. 98-473, Title II, ch. 2, § 212(a), 98 Stat. 1837, 1998 (enacting 18 U.S.C. § 3582(c))). But Congress retained one exception in the form of compassionate release, codified at 18 U.S.C. § 3582(c)(1)(A).

18 U.S.C. § 3582(c)(1)(A)(i) authorizes a court to grant compassionate release if, once the defendant has exhausted their administrative remedies, the court finds that "extraordinary and compelling reasons" warrant sentence reduction, consistent with policy statements issued by the United States Sentencing Commission ("Sentencing Commission"), and such a reduction would not be inconsistent with the sentencing factors set forth in 18 U.S.C. § 3553(a).

## ANALYSIS

2

I.   **Exhaustion of Administrative Remedies**

Mr. Velez filed a written request for compassionate release with the warden of FCI Florence on November 13, 2023. Mot. Ex. 1, ECF No. 387. The request was denied on November 16, 2023. *Id.* Thus, the Court finds that Mr. Velez has exhausted his administrative remedies and therefore satisfied the first requirement under § 3582(c)(1)(A).

II.  **Extraordinary and Compelling Reasons for Relief**

When it enacted the compassionate release statute, "Congress never defined or provided examples of 'extraordinary and compelling reasons.'" *U.S. v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021). Instead, it delegated that responsibility to the United States Sentencing Commission. *Id.*; 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18 shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). The Sentencing Commission's Policy Statement § 1B1.13(b) enumerates six examples of "extraordinary and compelling" reasons to grant compassionate release: medical circumstances, age, family circumstances, victim of abuse, other reasons, and unusually long sentence. U.S. Sent'g Guidelines Manual § 1B1.13(b) (U.S. Sent'g Comm'n 2023).

Mr. Velez argues he is serving an "unusually long sentence" and thus merits relief under this prong.[2] Mot. 5—14, ECF No. 387. To prevail on this claim, Mr. Velez must show (1) he

---

2 In the alternative, Mr. Velez asks for relief for "other reasons," claiming that he merits relief based on "changes to the legal landscape," "his extraordinary rehabilitation," and "his strong support network." Reply 6, ECF No. 394. Because the Court finds that Mr. Velez meets the requirements under U.S. Sent'g Guidelines Manual § 1B1.13(b)(6) "Unusually Long Sentence," the Court declines to evaluate whether he has met the standard for "Other Reasons" for relief.

received an unusually long sentence, (2) a change in law, (3) this change would produce a gross disparity between the sentence he is currently serving and the sentence likely to be imposed at the time the motion was filed. U.S. Sent'g Guidelines Manual § 1B1.13(b)(6) (U.S. Sent'g Comm'n 2023).³

### a. *Unusually Long Sentence*

Life sentences in federal court are "rare." U.S. Sent'g Comm'n, *Life Sentences in the Federal System* 2 (Jul. 2022), (https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220726_Life.pdf). But life sentences among drug offenders are even more rare, constituting only 22.9% of federal defendants sentenced to life. *Id.* at 7—8. The Government does not dispute that Mr. Velez is serving an unusually long sentence. Reply 2, ECF No. 394. Thus, the Court finds no further analysis is required, and Mr. Velez has shown that he is serving an "unusually long sentence."

### b. *Change in Law*

To prevail on his claim under the Sentencing Commission guidelines, Mr. Velez

---

3 The Government argues that not only does Mr. Velez not qualify for sentence reduction under this policy, but that the Sentencing Commission exceeded its authority when it promulgated this policy statement. Response ("Resp.") 8–11, ECF No. 393. The Government cites to *U.S. v. Escajeda*, which interpreted "extraordinary and compelling reasons" to be limited to "extraordinarily severe exigenc[ies] not foreseeable at the time of sentencing and unique to the life of the prisoner." Resp. 9, ECF No. 393 (citing 58 F.4th 184, 186 (5th Cir. 2023)). The Government argues that the changes in law that Mr. Velez cites to "does not create any 'exigency,' much less one 'unique to the life of' any defendant." *Id.* Instead, they reflect "the operation of ordinary nonretroactivity principles, which already consider and reject the notion that all changes in the law should be allowed to disturb final convictions and sentences." *Id.* However, *U.S. v. Jean* clarified that whether circumstances are "unique to the life of the prisoner" does not involve whether the reason is "unique in its own right" but instead whether is it "unique when applied to a particular defendant." 108 F.4th 275, 286 (5th Cir. 2024). Although "sentencing laws frequently change, non-retroactive changes in the law will affect each person individually." *Id.* While changes in the law may result in no change for some defendants, "others . . . may be faced with decades-long disparities as a result of the same change." *Id.* For this reason, the Court held that "the question of whether non-retroactive changes in the law plus extraordinary rehabilitation rise to the level of extraordinary and compelling reasons for compassionate release in any particular case should be left to the sound discretion of the district court." *Id.* at 286—287. Following *Jean*, the Court finds that it acts within its authority to decide Mr. Velez's motion for compassionate release.

must show a "change in the law" since he was sentenced. U.S. Sent'g Guidelines Manual § 1B1.13(b)(6) (U.S. Sent'g Comm'n 2023). Mr. Velez highlights two examples of such changes: (1) *Alleyne v. United States*, 570 U.S. 99 (2013), which held that any fact used to determine a mandatory minimum must be found by a jury beyond a reasonable doubt and (2) *United States v. Booker*, 543 U.S. 220 (2005), which held that the Sentencing Guidelines were no longer mandatory. Mot. 7—9, ECF No. 387.[4]

The Government, however, argues that *Alleyne* and *Booker* represent "prototypical procedural rules." Resp. 7, ECF No. 393 (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353, 354 (2004)). Because these laws do not alter "the range of conduct or the class of persons that the law punishes" but instead "only change 'the manner of determining the defendant's culpability,'" the Government claims that they do not constitute a "change in law" under § 1B1.13(b)(6). *Id.*

Yet the case the Government relies on for this proposition, *Schriro v. Summerlin*, involved a habeas petition, not a motion for compassionate release, and therefore invoked an entirely different legal standard. *See* 542 U.S. 348 (2004). While *Schriro* evaluated whether a change in law was substantive or procedural, s*ee* 542 U.S. at 351—355, this distinction is relevant in the habeas context but not relevant to compassionate release. The Sentencing Commission's requires a "change in the law," but it does not distinguish between a substantive

---

4 The Government, however, claims that Mr. Velez cannot meet the requirements under § 1B1.13(b)(6) because he "is not relying on a change in law . . . such as a subsequent decision by Congress to lower the applicable penalties for his offense." Resp. 6, ECF No. 393. Instead, the Government claims he "seeks to challenge the validity of his judgment based on a judicial decision interpreting existing law in a manner that supports a claim of legal error that he did not previously recognize." *Id.* at 6-7. Thus, the Government argues, Mr. Velez is "in effect using a compassionate release motion to bring . . . [a] challenge to the validity of his sentence." *Id.* at 7.
But "Mr. Velez is not attacking his conviction, nor is he attacking the validity of his sentence." Reply 3, ECF No. 394. Instead, he is "'argu[ing] that his sentence is now unjustly long' following intervening case law." Notice of Supplemental Authority ("Notice") 2, ECF No. 400 (quoting *Jean*, 108 F.4th at 285). Therefore, a motion for compassionate release is the appropriate avenue for Mr. Velez's request. *See Jean*, 108 F.4th at 285.

or procedural change. U.S. Sent'g Guidelines Manual § 1B1.13(b)(6) (U.S. Sent'g Comm'n 2023). Because the distinction between substantive and procedural changes in law is irrelevant here, the Court finds that *Alleyne* and *Booker* constitute changes in law under the Sentencing Commission's policy guidelines.

    c. *Gross Disparity*

Finally, to show that the length of his sentence is an "extraordinary and compelling reason" for relief, Mr. Velez must show that the change in law would "produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." U.S. Sent'g Guidelines Manual § 1B1.13(b)(6) (U.S. Sent'g Comm'n 2023).

    1. *Alleyne* and *Haines*

Since Mr. Velez was sentenced, subsequent case law has provided more robust procedural safeguards for defendants in his position. *Alleyne* required that any fact used to determine a mandatory minimum must be found by a jury beyond a reasonable doubt. 570 U.S. at 108. And *Haines* held that, "for purposes of statutory minimums at sentencing, the relevant quantity is the quantity attributable to the individual defendant" instead of the "quantity attributable to the entire conspiracy." 803 F.3d 713, 739, 742 (5th Cir. 2015); *see also U.S. v. Williams*, 2021 WL 5206206, * 4 (D.D.C. 2021) ("Although permissible at the time, today [Defendant] could not face a mandatory life without parole sentence based on a conspiracy-wide drug finding gleaned from a Presentence Report.")

But because Mr. Velez was sentenced before either *Alleyne* or *Haines* was decided, he lacked access to these procedural safeguards. The quantity of marijuana attributable to him was decided not by a jury but by Probation. *See* PSR ¶ 89, ECF No. 401. And this quantity of marijuana determined his life sentence because offenders involved in drug trafficking

6

are subject to widely disparate sentences depending on the quantity of drugs involved. For example, if probation had found Mr. Velez responsible for the minimum quantity of marijuana (less than one kilogram), after factoring in his upward adjustments, he would have faced a 15–21-month guideline sentence. *See* U.S. Sent'g Guidelines Manual § 2D1.1(c)(17) (U.S. Sent'g Comm'n 2023). Instead, because Probation found him responsible for 58,923.45 kilograms (the amount attributable to the entire conspiracy), he was subject to a mandatory life sentence. *Id.* § 2D1.1(c)(2).

Mr. Velez does not argue that his guideline sentence would be different if the Court found him responsible for trafficking 58,923.45 kilograms of marijuana today. Instead, he argues that he would be entitled to additional procedural safeguards that could have fundamentally altered the quantity of drugs attributable to him. Mot. 12, ECF No. 387. Because the quantity of marijuana involved in the conspiracy determined Mr. Velez's life sentence, the Court finds that even a small difference in how that quantity was calculated could lead to a "gross disparity" in the sentence he is currently serving and the sentence he would receive today.

   *i. Booker*

When Mr. Velez was sentenced, this Court had no choice but to sentence him to life in prison because, in 2003, the Sentencing Guidelines were "mandatory and binding on all judges." *Booker*, 543 U.S. at 233. But this changed in 2005, when *Booker* converted the Sentencing Guidelines from mandatory to "advisory." *Gall v. U.S.*, 552 U.S. 38, 46 (2007). Mr. Velez argues that there is a gross disparity between the sentence he received pre-*Booker* and the sentence he would have received today. Mot. 9—12, ECF No. 387.

Like *Alleyne, Booker* did not make a substantive change to the Sentencing

7

Guidelines, but instead provided trial courts with the discretion to deviate from those guidelines. As a result, several courts recognized *Booker* as "a significant factor in the extraordinary and compelling analysis." *U.S. v. Birkett*, 2023 WL 4274683, *7 (E.D.N.Y. June 29, 2023); *see also U.S. v. Lara*, 658 F. Supp. 3d 22, 37 (D.R.I. Mar. 1, 2023) ("Changed Sentencing Guidelines serve as another extraordinary and compelling reason to consider a sentence reduction."); *see also U.S. v. Ramsay*, 538 F. Supp. 3d 407, 427 (S.D.N.Y. May 11, 2021) ("[T]he mandatory nature of [Defendant's] sentence is an additional extraordinary and compelling reason warranting a sentence reduction.").

Although the Court cannot predict Mr. Velez's precise sentence if he were sentenced today, if the Court followed national sentencing trends, it would unquestionably not have sentenced him to life. Between 2017 and 2021 not one federal defendant was sentenced to life for trafficking marijuana. U.S. Sent'g Comm'n, *Life Sentences in the Federal System* Figure 4 (Jul. 2022), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220726_Life.pdf. If the Court were to impose a life sentence on Mr. Velez today, this decision would situate the Court at the most punitive extreme of the judiciary. Because the Court would not intend to take this position, it finds that the sentence Mr. Velez is serving is grossly disproportionate to the sentence he would receive today.

d. *Conclusion*

Based on (1) the length of Mr. Velez's sentence, (2) changes in law under *Alleyne* and *Booker*, (3) and the decline in life sentences imposed on defendants charged with trafficking marijuana, the court finds that Mr. Velez is serving an "unusually long sentence," under § 1B1.13(b)(6) of the Sentencing Commission's Guidelines Manual. The Court thus finds

that Mr. Velez has demonstrated "extraordinary and compelling reasons" for relief, under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. Section 3553 Factors

At the final step, 18 U.S.C. § 3582(c)(1)(A) instructs courts to "consider the factors set forth in section 3553(a)" before granting compassionate release. In their pleadings, the parties focused on three factors in particular: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to afford adequate deterrence to criminal conduct; and the need to protect the public. Mot. 14–17, ECF No. 387; Resp. 12–14, ECF No. 393.

The Government argues that Mr. Velez poses a high risk of recidivism, and therefore there is an ongoing need to detain him in order to "protect the public and deter further crimes." Resp. 13, ECF No. 393. Yet the Government "does not give a single example specific to Velez" to support this claim. Reply 8, ECF No. 394. Instead, the Government cites to national statistics showing that "nearly half" of federal defendants released in 2010 were later rearrested. Resp. 13, ECF No. 393 (citing U.S. Sent'g Comm'n, *Recidivism of Federal Offenders Released in 2010* (Sept. 2021), https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010). But Mr. Velez argues that, considering his age and the length of his sentence, he actually poses a *lower* risk of recidivism. Mot. 17, ECF No. 387 (citing U.S. Sent'g Comm'n, *Length of Incarceration and Recidivism* (June 2022), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220621_Recidivsm-SentLength.pdf).

That said, the Court is less persuaded by national statistics on recidivism and more persuaded by Mr. Velez's personal rehabilitation. Post-sentencing rehabilitation may

"critically inform a sentencing judge's overarching duty under § 3553." *Pepper v. U.S.*, 562 U.S. 476, 491 (2011); *see also U.S. v. Watson*, 2022 WL 1125801, *5 (N.D. Okla. Apr. 15, 2022) ("Evidence of post-sentence rehabilitation is likely the most critical of core considerations for the Court in a § 3582(c) proceeding."). During his time in custody, Mr. Velez has earned thousands of hours of credit in rehabilitative, educational, and vocational training. Mot. 15, Ex. B-1,2, 6, ECF No. 387. In April 2005, Mr. Velez completed the CODE Program (now called the CHALLENGE Program), Ex. B-1,2, ECF No. 387, an "intensive Residential Treatment Program . . . designed to facilitate both favorable institutional adjustment and successful reintegration to the community." U.S. Dep't of Justice, Psychology Treatment Programs Ch. 5, p. 1 (May 26, 2016), https://www.bop.gov/policy/progstat/5330.11.pdf. While in custody, Mr. Velez also participated in several work skills trainings, including UNICOR, Mot. 16, ECF No. 387, whose mission is to "prepar[e] inmates for successful reentry through job training." Federal Bureau of Prisons, *UNICOR*, https://www.bop.gov/inmates/custody_and_care/unicor_about.jsp (last accessed Aug. 22, 2024). Participants in UNICOR are "24% less likely to revert to criminal behavior." *Id.* Finally, Mr. Velez served as a "Suicide Watch Companion" in the BOP's Suicide Prevention Program, observing potentially suicidal inmates. Mot. 16, ECF No. 387. Because of the "sensitive nature" of this work, BOP facilities use "considerable care" to select suicide watch companions. U.S. Dep't of Justice, *Program Statement 5324.08, Suicide Prevention Program* 14 (Mar. 2007), https://www.bop.gov/policy/progstat/5324_008.pdf. Observers are selected based on "their reputation within the institution" and "must be mature, reliable individuals who have credibility with both staff and inmates." *Id.* Based on his rehabilitative record, the Court agrees with Mr. Velez that, over the course of his two decades in custody, he has shown "exceptional character, growth and capacity for change." Mot. 15, ECF No. 387.

Rehabilitation can inform several sentencing factors, including "the history and characteristics of the defendant," "the need for the sentence imposed," to "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "provide the defendant with needed educational or vocational training . . . or other correctional treatment in the most effective manner." *Pepper*, 562 U.S. at 491 (quoting 18 U.S.C. § 3553(a)). The Court finds that Mr. Velez's rehabilitative efforts support many of these factors and ultimately tip them in his favor.

## CONCLUSION

The Court finds that Mr. Velez has shown he is serving an "unusually long sentence," as defined by the Sentencing Commission in its policy guidelines. Thus, the Court finds that he has demonstrated "extraordinary and compelling reasons" for relief under 18 U.S.C. § 3582(c)(1). The Court also finds that, given Mr. Velez's rehabilitative record, the factors set forth in 18 U.S.C. § 3553(a) support his release. Accordingly, after due consideration, the Court is of the opinion that the following orders should enter:

**IT IS HEREBY ORDERED** that Defendant Benito Velez's Motion for Sentence Reduction, ECF No. 387, is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Benito Velez's term of imprisonment is reduced to time served.

**IT IS FURTHER ORDERED** that this order is **STAYED** for up to thirty days to (1) verify Defendant Benito Velez's residence, (2) establish a release plan, (3) make appropriate travel arrangements, and (4) ensure Defendant Benito Velez's safe release. Defendant Benito Velez shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for him to travel. There shall be no delay in ensuring

travel arrangements are made. If more than thirty days are needed to make appropriate travel arrangements and ensure Defendant Benito Velez's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.

**IT IS FINALLY ORDERED** that the previously imposed conditions of supervised release in the amended judgment in Defendant Benito Velez's criminal case, ECF No. 285, are unchanged.

SIGNED this **28** **Th** day of **August 2024**.

_____
**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**